UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:18cv529-MOC

| | |
|---|---|
| **THERESA MAY DICK, o/b/o,** <br> **DENNIS JAMES DICK, deceased,** <br><br> Plaintiff, <br><br> v. <br><br> **NANCY BERRYHILL,** <br> **Acting Commissioner of Social Security** <br><br> Defendant. | ORDER |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 11, 12). The matter is ripe for review. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

### FINDINGS AND CONCLUSIONS

I. **Administrative History**

Plaintiff's widow brought this action, under 42 U.S.C. §§ 405(g) and 1383(c)(3), for review of defendant's final administrative decision denying her husband's February 23, 2015, application for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act ("the Act"). Plaintiff died on August 17, 2016, due to circumstances not at issue in this case, as acknowledged by Plaintiff's widow (cancer of liver, liver cirrhosis, alcohol abuse). (Tr. 27, 31-32).

Plaintiff's DIB application alleged disability onset of July 12, 2012, and was denied initially on May 13, 2015, and, upon reconsideration, on July 17, 2015. (Tr. 12). Plaintiff timely requested an administrative hearing, which was held on July 21, 2017. (Tr. 25-49). An administrative law judge ("ALJ") decision denying benefits was made on September 20, 2017. (Tr. 12-19). Plaintiff appealed to defendant's Appeals Council ("AC"), which, on July 27, 2018, denied Plaintiff's request for review, thereby causing the ALJ's decision to become the "final decision" of the Commissioner. (Tr. 1-6). Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

## II.    Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the Court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.   Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### A. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

### B. Sequential Evaluation

The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

Here, Plaintiff's date last insured ("DLI") for DIB was December 31, 2014. (Tr. 14, Finding 1). Therefore, he would have to prove he became disabled on or before the DLI.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

**C. The Administrative Decision**

In a decision dated September 20, 2017, (Tr. 12-19), the ALJ found that Plaintiff had the following severe impairments: history of chronic venous insufficiency, neuropathy, Hepatitis C, and chronic obstructive pulmonary disease (COPD). (Tr. 14, Finding 3). The ALJ also found that Plaintiff's alleged left hip pain was definitively diagnosed outside of the DLI (December 31, 2014) and, therefore, Plaintiff lacked insured status to claim a benefit for this alleged impairment. (Tr. 14). The ALJ further found that, in any event, this alleged impairment did not last the required twelve continuous months, "as there was sufficient medical improvement and no significant limitation of the claimant's ability to do basic light work." (Id.).

Plaintiff's widow acknowledged at the administrative hearing that after Plaintiff's hip surgery of March 31, 2015, his hip did not bother him anymore. (Tr. 32). Furthermore, the record contains a note by orthopedic surgeon, Dr. Matthew Gullickson, dated April 20, 2015, stating that Plaintiff was driving and required no pain medication. (Tr. 541). Another note by Dr. Gullickson dated June 8, 2015, states that Plaintiff told him his hip was doing "fantastic," and that he "is having no pain, no dysfunction, etc. They just got back from a long trip and cruise, etc. He has not had any complaints of pain or dysfunction." (Tr. 530).

The ALJ further found that, through the DLI, Plaintiff had the residual functional capacity (RFC)[1] to perform a restricted range of light exertional work. (Tr. 15, Finding 5). The ALJ limited Plaintiff to occasional climbing of ladders and avoidance of concentrated exposure to fumes. (Id.).

---

[1] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. § 404.1545.

The ALJ detailed the evidence considered in formulating the RFC. (Tr. 15-17). Therefore, the ALJ performed a functional analysis in determining RFC. Based on the established RFC, the ALJ denied benefits at Step 4 of the sequential evaluation process on the basis that Plaintiff could have performed his past relevant work ("PRW") as a network engineer control operator, either as he had performed it or as it is generally performed in the national economy. (Tr. 18, Finding 6). Plaintiff's widow testified that this job was full-time. (Tr. 46). The vocational expert ("VE") identified this job as skilled and light in exertion in accordance with Dictionary of Occupational Titles ("DOT") number 031.132-010. (Tr. 18, 47).

Alternatively, the ALJ denied benefits at Step 5 of the sequential evaluation process. (Tr. 18-19, Finding 6). Having propounded a hypothetical question to the VE with the established RFC described above, the VE testified that a hypothetical person could perform not only this PRW, but also the unskilled, light exertional jobs of file clerk (DOT number 206.387-034) and order filler (DOT number 222.487-014), and semi-skilled, light job of customer service clerk. (DOT number 299.367-010). (Tr. 45).

Responding to counsel, the VE testified the jobs of file and customer service clerk would remain if the hypothetical person needed a sit/stand option every 30 minutes. (Tr. 48). The VE testified that if the hypothetical person had to keep his legs elevated horizontally in line with the chair's elevation, whether this accommodation would be accepted would depend on the employer. (Id.). However, the need for use of a cane to balance would result in a reduction in job numbers. (Id.).

## V.    Discussion

Substantial evidence supports defendant's decision, and defendant applied the correct legal standards in reaching that decision. As mentioned, to qualify for DIB benefits, Plaintiff must

prove he became disabled on or before the DLI of December 31, 2014. (Tr. 14, Finding 1). As also mentioned, Plaintiff is alleging disability onset as of July 12, 2012. (Tr. 12).

Plaintiff raises two challenges to the ALJ's decision: (1) the ALJ erred in failing to consider properly all of Plaintiff's severe impairments and (2) the ALJ erred by failing to find that Plaintiff equaled Listing 4.11 for chronic venous insufficiency. However, as discussed below, these arguments do not present a basis for remand.

**A. Whether the ALJ Properly Considered All of Plaintiff's Relevant Severe Impairments**

**1. Plaintiff's liver cancer and cirrhosis, alcohol abuse, hypertension, hammertoe, and plantar fasciitis**

Plaintiff first argues that the ALJ improperly failed to consider all of Plaintiff's relevant severe impairments. For the following reasons, the Court does not agree. Plaintiff bears the burden of production and proof during the first four steps of the inquiry. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). The ALJ is not required to raise issues not asserted by Plaintiff and to discuss every piece of medical evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865–66 (4th Cir. 2014). See also Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision").

Plaintiff's brief begins by mentioning that Plaintiff had liver cancer, chronic cirrhosis, alcohol abuse, hypertension, and hammertoe deformity. (Doc. No. 11-1 at 2-3: Pl. Br.). Plaintiff's brief also discusses Plaintiff's plantar fasciitis. (Id. at 10-11). Yet, Plaintiff never alleged disability due to these conditions. In an adult disability report dated April 9, 2015, Plaintiff, when asked to list all physical or mental conditions that limit his ability to work, never

listed liver cancer or cirrhosis, alcohol abuse, hypertension, hammertoe deformity, or plantar fasciitis. He listed only feet/leg neuropathy/arthritis and left hip replacement. See (Tr. 234).

Specifically, as to the ALJ's failure to discuss Plaintiff's plantar fasciitis, as mentioned, Plaintiff did not list plantar fasciitis as a disabling impairment in his adult disability report. At the hearing, Plaintiff's widow admitted he was working at a restaurant in 2012 with that condition. (Tr. 38). She mentioned he kept working with that condition and they owned their own restaurant "before that." (Id.). A progress note in the records of Carmel Foot Specialists dated May 8, 2013, which was above ten months after alleged disability onset of July 12, 2012, states, "He is a chef and does stand for long periods of time at work." (Tr. 610). Therefore, Plaintiff's plantar fasciitis did not prevent him from working as a chef. Furthermore, physical examination at that time by Kevin Molan, D.P.M., of Carmel Foot Specialists revealed no edema, intact patellar and Achilles reflexes, and normal muscle strength. (Id.).

The record also contains a note by Dr. Roy Friedman of Novant Health dated February 20, 2015, stating that Plaintiff could walk a flight of stairs without shortness of breath or cardiac problems. (Tr. 500). Therefore, Plaintiff's plantar fasciitis did not prevent him from climbing stairs. In addition, at that visit, Dr. Friedman further noted that Plaintiff's COPD diagnosis was likely from his smoking, and Plaintiff did not require or use any supplemental oxygen or inhalers. (Tr. 502). Finally, the records include an entry by Dr. Matthew Gullickson of OrthoCarolina dated May 11, 2015, relating that Plaintiff reported that "yesterday, he [Plaintiff] says he was 'walking all day long' and "he went to a comedy concert last night, etc. Really no issues from his standpoint. He feels good. His appetite is back, etc." (Tr. 554).

In sum, a review of the record shows that the ALJ properly considered all of Plaintiff's relevant severe impairments, and the ALJ's failure to find as disabling his liver cancer, chronic

cirrhosis, alcohol abuse, hypertension, and hammertoe deformity, and plantar fasciitis is not grounds for reversal or remand.

### 2. Left Hip Replacement

Plaintiff also argues that the ALJ improperly considered Plaintiff's hip replacement as a non-severe impairment because he incorrectly held that Plaintiff's hip pain did not begin until after the DLI of December 31, 2014. As noted, in the adult disability report, Plaintiff mentioned his left hip replacement as a condition limiting his ability to work. (Tr. 234). Plaintiff's medical record from Dr. Friedman reflects this hip pain began no earlier than September 2014. (Tr. 478). Thus, it does appear that the ALJ incorrectly stated that Plaintiff's hip pain did not begin until after the DLI of December 31, 2014. Plaintiff fails to mention, however, that the ALJ also found, in any event, that Plaintiff's alleged left hip pain did not last the required twelve continuous months due to significant medical improvement. (Tr. 14). Substantial evidence supports the ALJ's alternative finding that Plaintiff's left hip pain did not last the required twelve continuous months due to significant medical improvement. That is, Plaintiff's widow acknowledged at the administrative hearing that after Plaintiff's hip surgery of March 31, 2015, his hip did not bother Plaintiff anymore. (Tr. 32). Furthermore, a note by Dr. Matthew Gullickson dated April 20, 2015, states that Plaintiff was driving around and required no pain medication. (Tr. 541). On May 22, 2015, Plaintiff told Dr. Gullickson he was ready to go on a cruise the next week. (Tr. 532). A note by Dr. Matthew Gullickson from an appointment with Plaintiff dated June 8, 2015, states that Plaintiff told Dr. Gullickson he had just returned from a long trip and cruise without any complaints of pain or dysfunction. At that appointment, Plaintiff told Dr. Gullickson, just 2 ½ months following his left total hip arthroplasty, that his hip was doing "fantastic." (Tr. 530). Examination of his left hip at that time was "completely

benign" with "pain free range of motion." (Id.). Later, on October 1, 2015, returning for a six-month checkup, Dr. reported that Plaintiff "is having no hip issues." (Tr. 618). Therefore, any error made by the ALJ in the decision in finding that Plaintiff's hip pain did not begin until after December 31, 2014, his last date of insured, was harmless. Because substantial evidence supports the lack of a finding of disability based on Plaintiff's left hip pain, reversal or remand is not appropriate.

   **3. Edema**

Plaintiff next argues that the ALJ's RFC fails to account for Plaintiff's alleged lower extremity swelling due to varicose veins. (Doc. No. 11-1 at 7-8). The record shows, however, that Plaintiff had varicose vein problems before his alleged disability onset and such problems did not keep him from performing substantial gainful activities, such as working as a restaurant chef, which required him to be on his feet most of the day. For example, in November 1, 2010, Plaintiff underwent vein surgery at the CR Vein and Vascular Center. (Tr. 346). As noted in the medical records above cited, his vein problems also subsequently did not prevent him from "walking all day" or walking up a flight of stairs or going on a cruise.

Podiatrist Dr. Kevin Molan sent Plaintiff to neurologist Dr. T. Rao of the Neurological Institute for an evaluation of Plaintiff's neurological problems. (Tr. 602-07). On examination on August 8, 2013, despite allegations of foot and leg swelling, Dr. Rao found "no peripheral edema." (Tr. 603). At the conclusion of the examination, Plaintiff told Dr. Rao that "he would like to avoid medications at this time and manage his symptoms with lifestyle changes and natural supplements." (Id.).

A physical examination by Dr. Friedman on December 18, 2014, revealed only some tenderness, dark discoloration to the skin on his feet from chronic venous changes, and "no

edema" or erythema. (Tr. 641). A day earlier, on December 17, 2014, in assessing hammertoe in Plaintiff's right foot, Dr. Brian Killian of Matthews Foot Care found Plaintiff to have normal muscle strength, ankle joint range, muscle tone, and range of motion "without pain [emphasis supplied]." (Tr. 583).

Contrary to Plaintiff's argument, the Commissioner sufficiently discussed and considered Plaintiff's edema. Furthermore, as noted by the ALJ, (Tr. 17), State agency medical reviewing consultant Dr. Ellen Huffman-Zechman supports the ALJ's RFC. See (Tr. 64-65). See Lusk v. Astrue, No. 1:11-cv-196-MR, 2013 WL 498797, at *4 (W.D.N.C. Feb. 11, 2013) (expert opinions of agency reviewing physicians may amount to substantial evidence where they represent a reasonable reading of the relevant evidence). In addition, it is the claimant's burden to establish how any medically determinable impairments affect functioning. See 20 C.F.R. §§ 404.1512(a) & 416.912(a); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (memorandum and recommendation of magistrate judge) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). Plaintiff has failed to meet that burden with regard to his edema.

**B. Plaintiff's Argument that He Meets or Equals Listing 4.11 for Chronic Venous Insufficiency**

Next, Plaintiff's brief attempts to piece together medical evidence in asserting that Plaintiff satisfies Listing 4.11 of the Social Security Listing of Impairements. (Doc. No. 11-1 at

12-16). The listings are a regulatory device used to streamline the decision-making process by identifying claimants whose medical impairments are so severe that they would be found disabled regardless of their vocational background. 20 C.F.R. § 404.1525(a); Sullivan v. Zebley, 493 U.S. 521, 532 (1990) (citations omitted). The medical criteria defining the listed impairments are appropriately set at a higher level than the statutory standard for disability. Zebley, 493 U.S. at 528–32. To be found presumptively disabled, a claimant must show that all of the criteria for a listing have been met. 20 C.F.R. § 404.1525(c)(3); Zebley, 493 U.S. at 530. Meeting or equaling a listing cannot be based simply on a claimant's testimony or speculation. An impairment that meets only some of the criteria for a listed impairment, "no matter how severely, does not qualify." Id. It is always a claimant's burden to present evidence that an impairment or combination of impairments meets or equals a listed impairment by presenting medical findings either meeting all of the criteria of a listed impairment or equal in severity to all the criteria for the one most similar listed impairment. 20 C.F.R. § 404.1526; Zebley, 493 U.S. at 531.

To satisfy the criteria of Listing 4.11, Plaintiff must prove that, on or before the date he was last insured, he suffered from "chronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system" and either "extensive brawny edema" or "[s]uperficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 4.11. Plaintiff has failed to meet the burden of showing that he satisfies Listing 4.11. As noted, this listing requires medical expertise for analysis, and Plaintiff has presented none to support Plaintiff's assertion. In fact, Plaintiff relies on a Doppler study done in March 2010 by Dr. Eric Wang, more than two years before Plaintiff alleges

disability onset. Significantly, that study found "no evidence of bilateral lower extremity deep venous thrombosis." (Tr. 360). After a venous procedure performed in September 2010, Dr. Wang reported that not only did Plaintiff "tolerate the procedure well," but he also "ambulated for 20 minutes, and left the office in stable condition." (Tr. 355).

Notwithstanding Plaintiff's assertion, the record does contain medical opinion evidence that Listing 4.11 is inapplicable in this case. As noted by the ALJ, (Tr. 17), State agency medical reviewing consultant Dr. Ellen Huffman-Zechman supports the ALJ's RFC. See (Tr. 64-65). In so supporting the RFC, Dr. Huffman-Zechman notes: "[d]oes not meet the requirements of Listing 4.11 (no extensive brawny edema or chronic and ongoing stasis dermatitis or ulcerations). No evidence of DVTs." (Id.). In sum, Plaintiff has presented no medical expertise to support that Plaintiff meets or equals Listing 4.11. Thus, this final contention by Plaintiff is without merit.

## VI. Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 11) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 12) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: September 16, 2019

Max O. Cogburn Jr.
United States District Judge